CHASS v. UNITED STATES.*

(Circuit Court of Appeals, Third Circuit. June 26, 1919.)

No. 2476.

1. CRIMINAL LAW ⬅552(3)—CIRCUMSTANTIAL EVIDENCE—SUFFICIENCY.
    To justify a conviction of crime on circumstantial evidence, the latter must be such as to exclude every reasonable hypothesis but that of guilt.

2. RECEIVING STOLEN GOODS ⬅8(4)—EVIDENCE—SUFFICIENCY.
    In a prosecution for violation of Act Cong. Feb. 13, 1913 (Comp. St. §§ 8603, 8604) for feloniously having in possession certain plush knowing it to have been stolen from an interstate freight shipment, evidence, although

circumstantial, *held* sufficient to sustain a verdict of guilty, based upon a finding that defendant had the requisite guilty knowledge that the goods were stolen.

In Error to the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

Philip Chass was convicted of violating Act Cong. Feb. 13, 1913, in feloniously having in his possession certain plush knowing it to have been stolen from an interstate shipment of freight. A new trial was denied, and he brings error. Affirmed.

H. P. Lindabury, of Newark, N. J., for plaintiff in error.

Samuel I. Kessler, of Newark, N. J., for the United States.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

HAIGHT, Circuit Judge. [1] The plaintiff in error, Philip Chass, and one Louis Rubin were convicted under an indictment which charged them with having violated an act approved on February 13, 1913 (37 Stat. L. 670, c. 50 [Comp. St. §§ 8603, 8604]), in that they feloniously had in their possession certain rolls or bolts of plush, which had theretofore been stolen while constituting a part of an interstate shipment of freight, knowing the same to have been stolen. Upon motion, the learned trial judge set aside the conviction of Rubin and granted a new trial to him, but declined to accord like treatment to Chass. It is not questioned that the goods were in the actual possession of the latter at the time alleged in the indictment, nor was any attempt made during the trial to controvert that part of the evidence produced by the government whch clearly warranted the inference that the goods, while in the possession of the Philadelphia & Reading Railway Company, and constituting a part of an interstate shipment of freight, were stolen from a railway car. The only alleged error now relied upon is the refusal of the court below to direct a verdict of acquittal as to Chass at the close of the whole case, upon the ground that the evidence was not sufficient to justify a finding that he had knowledge, when the goods came into his possession, that they had been stolen. There was, it is true, no direct evidence that he had such knowledge. But after a careful examination of the record, and bearing in mind the rule that to justify a conviction of crime on circumstantial evidence, the latter must be such as to exclude every reasonable hypothesis but that of guilt (Hart v. United States, 84 Fed. 799, 808, 28 C. C. A. 612 [C. C. A. 3d Cir.]; Glass v. U. S., 231 Fed. 65, 68, 145 C. C. A. 253 [C. C. A. 3d Cir]), we think that the inference could be legitimately drawn, from all the facts and circumstances which the testimony discloses, that he did have the requisite knowledge. Without even attempting to summarize all of the evidence or to point out the conflicts and contradictions therein, or attempted explanations of some incriminating facts, and lack of explanation of others, we are of the opinion that it was permissible for the jury to find therefrom the following salient facts: On March 6, 1918, Baxter, Kelly & Faust, manufacturers of plush in the city of Philadelphia, delivered 12 rolls or bolts of embossed plush, designed to be used for

lining coffins, and aggregating something over 750 yards, to the Philadelphia & Reading Railway Company, at one of its stations in that city, to be delivered by freight to the National Casket Company at East Cambridge, Mass. During the same day, and while the car in which the goods were loaded was lying at one of the freightyards of the railway company in Philadelphia, it was broken into, and these rolls of plush stolen. About two months later they were found in the possession of the plaintiff in error (hereafter referred to as the defendant), under the circumstances to be hereinafter mentioned. The defendant had come to this country from Russia about five years before that time, and at first had "worked at pants," then had peddled paper bags and twine among retail grocers and small merchants. Subsequently he had been employed for about two years by his brother-in-law Rubin, when the latter was engaged in the dress business, and for about two months preceding the robbery he had been engaged in the same business on his own account. About the 1st of March, 1918, he embarked on what he termed the business of "jobbing in woolens and silks." In the early part of that month he rented a small office in an office building in the city of Newark, N. J., which was tenanted chiefly by lawyers and real estate dealers, etc., but he never caused his name, or the name under which he claimed to be trading, to be placed on the door; nor did any customers ever come to the office during usual business hours. In the latter part of March, 11 of these rolls were delivered to him at this office by an express company, having apparently been brought from New York City. They remained in the office, in their original packages, until the 4th of the following May, when, during a search of the office by certain police authorities of Newark and New York, they were discovered and seized. The defendant, who was present at the time of the discovery of the goods, when first interrogated by the police officials as to how he had come into possession of them, stated that he did not know where they had come from other than that they, as well as a considerable quantity of other goods of entirely different character that were found in the office, had been brought there by a man whom he referred to as "Benny," who was to call later and be paid for them; the defendant having agreed to buy them. Later in the day, when further interrogated at police headquarters in Newark, he again stated that, with the exception of a "few pieces of poplins and woolens" which belonged to him, all of the goods found in the place had been brought there by this "Benny" under the circumstances before mentioned. Upon the trial he gave an entirely different version of how the goods had come into his possession. He then testified that during the latter part of March, while he was in a store in New York City, a man whom he had never seen before, and who was introduced to him as one "I. Jacobs," was endeavoring to sell the plush in question to the concern in whose place of business the defendant then was, and, being unable to make a sale to that concern, he turned to the defendant, and asked him whether he would care to purchase it; that thereupon, after some bargaining, he (the defendant), purchased it, and it was delivered to him, as before mentioned, within a few days

thereafter; and that shortly after it was delivered, Jacobs called upon the defendant in Newark, and the latter paid him $415 in cash for it, although he had not opened the packages or verified the quantity. He also testified that he paid Jacobs at the rate of 57½ cents per yard, notwithstanding that the prices at which the goods had been billed from the manufacturers to the National Casket Company ranged from 45 cents to 47½ cents only.

When one, charged with having stolen goods in his possession, makes a statement to the public authorities as to how he came to have them, and later, under oath, makes an entirely different statement, it seems quite impossible, in the light of the other circumstances above detailed, to escape the conclusion that reasonable men would be justified in drawing the inference therefrom that he knew or believed that the goods had been stolen. If he had come by them honestly or had no knowledge or reason to believe that they had been stolen, it is inconsistent with ordinary human conduct that he should have made two such utterly variant and irreconcilable explanations. In view of the contradictory statements, and the other circumstances of the case, the only hypothesis of innocence was that he had obtained possession of them in either one of the two ways that he had stated. It was unquestionably for the jury to decide whether either of the explanations which he gave was true, and, if neither were, they were certainly justified, in the light of the other circumstances in the case, in reaching the conclusion that he knew or believed that the goods had been stolen when he acquired them.

[2] As, therefore, there was substantial evidence from which the jury could find the requisite guilty knowledge on the part of the defendant, the trial court committed no error in declining to direct a verdict of acquittal.

Some question was raised on the argument, but it is not supported in the brief, that there was error in the charge to the jury in respect to reasonable doubt. An examination, however, of the charge of the learned trial judge convinces us that the case was properly and fairly submitted to the jury, both in respect to the questions of fact which it was necessary for them to decide, as well as the rules which were to govern them, in reaching their verdict.

The judgment below is accordingly affirmed.